UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

BRUCE A SMILEY,          )
          )
      Plaintiff,      )
          )
v.          )      No. 1:16-CV-469-HSM-SKL
          )
THE STATE OF TENNESSEE, *et al.*,  )
          )
      Defendants.    )
          )

## <u>MEMORANDUM OPINION</u>

Before the Court is Plaintiff's pro se complaint for violation of civil rights pursuant to 42 U.S.C. § 1983 [Doc. 2], and motion for leave to proceed *in forma pauperis* [Doc. 1]. In addition to these filings, the Court is also in receipt of Plaintiff's motion for appointment of counsel [Doc. 3] and accompanying memorandum of law in support of Plaintiff's motion for appointment of counsel [Doc. 4]. For the reasons discussed below, Plaintiff's request to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**. His request for counsel will be **DENIED** and complaint [Doc. 2] will be **DISMISSED** *sua sponte*.

## I.    BACKGROUND

### A.    Procedural

Plaintiff, an inmate of the Bledsoe County Correctional Complex ("BCCX"), filed the instant action under 42 U.S.C. § 1983 against several defendants, including: 1) The State of Tennessee and Tennessee Rehabilitative Initiatives in Correction ("TRICOR"), as well as managers Lisa Allen, Daniel Mercer, and David Baker, in their individual and official capacities, and Viet Spero, Environmental Safety and Health Specialist, in both his individual and official

capacity; 2) The Tennessee Department of Correction ("TDOC"), as well as safety director Michael Miller in both his individual and official capacity, and facility safety officers Jeff Hunt, Ryan Snelling, and Steve Coleman, in both their individual and official capacities; 3) The Tennessee Department of Labor and Work Force Development, Division of Occupational Safety and Health ("TOSHA"), as well as public sector supervisor Kevin Duke in both his individual and official capacity; and 4) Shaw Industries Group Incorporated ("Shaw"), as well as managers Tim Farner, Keith Harmon, and Darrin Edwards in their individual capacities [Doc. 2 p. 1].

Plaintiff asserts the following claims: 1) A violation of Plaintiff's right to Freedom of Speech under the First Amendment of the United States Constitution through Defendant Baker's termination of Plaintiff from the TRICOR program, as well as the actions of Defendants Baker and Edwards in conspiring to refuse to reinstate Plaintiff to the TRICOR program [Doc. 2 p. 24]; 2) A violation of Plaintiff's right to Equal Protection under the Fourteenth Amendment of the United States Constitution through the actions of Defendants' Baker and Edwards in not reinstating Plaintiff to the TRICOR program, as well as the actions of Defendant Duke in failing to perform an inspection of the plant within the BCCX industry building [*Id.* at 24–25]. Plaintiff also claims that Defendant Duke's actions constituted a state law tort of negligence [*Id.*]; and 3) A claim of deliberate indifference under the Eighth Amendment of the United States Constitution through the actions of Defendants' Spero, Miller, Hunt, Snelling and Coleman, by failing to ensure proper exhaust ventilation existed at the TRICOR/TDOC facility, as well as the actions of Defendants' Allen, Mercer, Baker, Jones, Farner, Harmon and Edwards in failing to ensure that proper protective equipment was in place [*Id.* at 25–26]. He seeks the following relief against the respective Defendants: $750,000 in compensatory damages and $500,000 in punitive damages, in addition to costs for the action.

### B. Factual

Plaintiff is an inmate in the custody of TDOC and has been incarcerated at BCCX at all times relevant to the current suit [*Id.* at 3]. In October 2008, the Plaintiff was assigned to the TRICOR wood flooring plant located at the BCCX industry building ("BCCX plant"), a "Prison Industry Enhancement Certification Program" between the State of Tennessee and Anderson Hardwood Floors, LLC ("Anderson"), a wholly-owned subsidiary of Shaw [*Id.* at 4-5].

Plaintiff's initial duties as a "wood scraper" were to scrape and sand cured wood putty from laminate wood flooring boards [*Id.* at 5]. Plaintiff worked as a wood scraper from October 2008 until November 2009 [*Id.*]. From November 2009 until September 2010, Plaintiff worked in "Quality Assurance" and "wood stack off" [*Id.* at 6]. Then, he was terminated from the TRICOR program in September 2010, but was reinstated in January 2011 after filing a grievance [*Id.* at 7]. Following his reinstatement, Plaintiff filed suit in the U.S. District Court for the Eastern District of Tennessee alleging that his termination occurred in retaliation for the exercise of his protected First Amendment rights [*Id.*]. The case settled prior to trial in 2014 [*Id.*]. The Defendant also currently has a case pending in the Chancery Court for Bledsoe County against Shaw and Defendants Harmon and Edwards claiming "breach of an oral contract and Promissory Estoppel" [*Id.* at 8]. After his reinstatement, Plaintiff worked as a "bench grinder" from January 2011 until November 31, 2015 [*Id.* at 7].

Plaintiff was terminated again from the TRICOR program on November 31, 2015 by Defendant Baker after a confrontation between the Plaintiff and another offender regarding the damaging of a tool blade [*Id.* at 13]. Plaintiff claims that Defendant Baker submitted false information to support his termination [*Id.*]. Additionally, "during mid 2015," Plaintiff reviewed his TRICOR offender file in the presence of Defendants Baker and Allen to aid in his state law

suit against Shaw [*Id.*]. Plaintiff then filed a grievance on December 7, 2015 claiming the termination was performed without a hearing and in violation of TDOC Policy 505.07, covering "Inmate Programming (Jobs/Classes/Treatment)" [Doc. 2-2, p. 3-5]. This TDOC policy covers non-disciplinary dismissals, and states "[a] minimum of three notes must be entered…prior to possible favorable consideration of a non-disciplinary dismissal or demotion request" [*Id.* at 16].

On February 7, 2016, Plaintiff requested information as to whether he was eligible for reassignment to the TRICOR program [Doc. 2, p. 14]. BCCX Coordinator Mike Harris responded that the decision was up to Defendant Baker [*Id.*]. Plaintiff then requested to be placed upon the BCCX job register on February 22, 2016, however this request has yet to be acknowledged [*Id.* at 15]. Also, Plaintiff attaches the contract between TRICOR and Anderson/Shaw, claiming Shaw managers are given the authority to determine which offenders are allowed to be reassigned to the TRICOR program [*Id.*; Doc. 2-4]. However, the only relevant language in the contract states "The Procuring Party [Anderson] shall have the right to recommend to TRICOR any worker disciplinary action deemed necessary up to and including suspension or removal from the work program as It would in the normal course of business practices…." [Doc. 2-4, p. 3].

In "mid 2015," Plaintiff began to experience shortness of breath ("SOB"), and made a chronic care appointment with Dr. Belknap, the physician at BCCX [*Id.* at 8-9]. Dr. Belknap ordered a chest x-ray to be performed "[o]n or about September 1, 2016" and placed Plaintiff on a breathing inhaler for asthma [*Id.* at 20]. However, as of the date of filing, Plaintiff has yet to receive the results of the chest x-ray [*Id.*]. He claims that his SOB is a result of exposure to respirable airborne dust particulates, including "Crystalline Silica," which he was exposed to as a result of his duties under the TRICOR program [*Id.* at 5, 9]. Dr. Belknap "attributed the Plaintiff's

SOB largely to the Plaintiffs age and weight" [*Id.* at 9]. Crystalline silica is claimed to cause respiratory illness and disease [*Id.* at 6].

Believing that a proper exhaust ventilation system was not in place at the BCCX plant, as well as the existence of several additional safety hazards, Plaintiff filed an OSHA complaint on April 8, 2016 [Doc. 2, p. 15; Doc. 2-5]. The U.S. Department of Labor forwarded the complaint to TOSHA, which TOSHA then referred to TDOC [Doc. 2, p. 15]. On May 12, 2016, Defendant Duke communicated with Plaintiff's daughter, informing her that TOSHA had not conducted an investigation, as it determined that the complaint was not in TOSHA's jurisdiction [*Id.* at 16].

Plaintiff later filed a request for documents from Anderson and Shaw, including Material Safety Data Sheets ("MSDS") for the BCCX plant located at BCCX [*Id.* at 16–17]. Although the request was filed on June 23, 2016, he did not receive the MSDS until August 16, 2016 [*Id.*]. Plaintiff claims that he has been exposed to airborne toxins and carcinogens, including crystalline silica, largely from the putty used at the BCCX plant [*Id.*]. Although an Industrial Hygiene Sampling performed at the BCCX plant on August 21, 2014 indicated that the plant is within the permissible exposure limit established by TOSHA, Plaintiff believes that the sampling is inaccurate due to an improper time-period base [*Id.* at 18]. Plaintiff also claims that several other contributing factors causing stress exist at the BCCX plant, including a preferential treatment for marketable job positions to life-offenders, as well as an overall lack of management shown through other offenders making supervisory decisions [*Id.* at 19].

Next, Plaintiff asserts that Defendant Spero wrote to Defendant Miller on July 11, 2016 that the "factory area" at the BCCX plant is air conditioned and fans are circulated [*Id.* at 18]. Claiming this letter to be an "informal response" to his OSHA request, Plaintiff claims no fans were present at the BCCX plant, and there is not a ventilation system in the building [*Id.*]. He filed

an additional TDOC grievance on September 4, 2016, regarding health hazards and a risk of future illness stemming from the working conditions at the BCCX plant [*Id.* at 18–19; Doc. 2-7].

Lastly, Plaintiff claims that no program was in place at the BCCX plant from October 2008 until October 2014 that "suggested or recommended the use of Personal Protective Equipment ("PPE")," which he defines as air particulate respirators [Doc. 2, p. 6]. Respiratory protection was claimed to be optional at the BCCX plant, although hand, eye and hearing protection was mandatory [*Id.*]. Around October 31, 2014, a voluntary use of filtering respirators program was instituted at the BCCX plant [*Id.*]. Additionally, Plaintiff claims that a "substantial amount of respirable airborne dust particulates" were created by the sanding and scraping of wood putty, but the only PPE available to him from October 2008 until "late 2001 or early 2012"[1] was the equivalent of a nuisance dust mask [*Id.* at 8]. Although PPEs rated for grinding and sanding were provided in late 2011 or early 2012, Plaintiff claims that there were several periods of time, including up to three weeks, where the particulate respirators were not available [*Id.*]. Also, Plaintiff states that "no suitable PPE's" were "available for use by the offender work force" for an additional period from June 10, 2015 until July 1, 2015 [*Id.* at 11]. Plaintiff claims that the overall lack of "suitable PPE's" resulted in a "substantial exposure to airborne particulates containing crystalline silica," and from January 2011 until late 2011 or early 2012, he frequently "coughed up and expelled thick, very dark colored mucus" [*Id.*].

Plaintiff claims that Defendants Spero and Miller were "responsible for the health and safety of offenders in the custody of the TDOC" [*Id.* at 20]. Additionally, he states Defendants Hunt, Snelling and Coleman "were responsible for maintaining an environment free of health and

---

[1] The Court assumes that Plaintiff intended to describe a time period from October 2008 until late 2011 or early 2012.

safety hazards" at the BCCX plant located at BCCX [*Id.* at 21].  Defendants Allen, Mercer, and

Baker were alleged to be "responsible for overseeing the daily operations" at the BCCX plant [*Id.*].

Lastly, Plaintiff claims that Defendants Jones, Farner, Harmon and Edwards were responsible for

providing "all necessary tools, equipment, and/or supplies necessary for the perform of the work"

at the BCCX plant, as well as "select those offender workers that they wish to recommend for

assignment into the work program" [*Id.*].

## II.    ANALYSIS

### A.    Motion to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act ("PLRA"), any prisoner who files a complaint in

a district court must tender the full filing fee or file (1) an application to proceed *in forma pauperis*

without prepayment of fees and (2) a certified copy of his inmate trust account for the previous

six-month period.  28 U.S.C. § 1915(a)(2).  Plaintiff submitted a fully compliant application to

proceed *in forma pauperis* on November 1, 2016 [Doc. 1], and it appears from that application that

he lacks sufficient financial resources to pay the $350.00 filing fee.  Accordingly, Plaintiff's

motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED** and, pursuant to 28 U.S.C.

§ 1915, the Clerk is **DIRECTED** to file this action without the prepayment of costs or fees or

security therefor as of the date the Complaint was received.  Because plaintiff has failed to state a

viable claim for relief under § 1983, however, process shall not issue and the action will be

**DISMISSED**.

### B.    Request for Appointment of Counsel

Plaintiff requests the court to appoint counsel to represent him in the current § 1983 action

[Doc. 3], accompanied by a memorandum of law and declaration in support of Plaintiff's motion

[Doc. 4; Doc. 4-1].  The appointment of counsel in a civil case is a matter within the discretion of

the Court. *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987). After careful consideration of Plaintiff's motions, including the type and nature of the case, its complexity, and Plaintiff's ability to prosecute his claim, this Court is of the opinion that counsel is not necessary at this time to ensure Plaintiff's claims are fairly heard. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Plaintiff's motion for appointment of counsel [Doc. 3] will be **DENIED**.

## C.    *Sua Sponte* Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief or are against a defendant who is immune. *See Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999) ("Congress directed the federal courts to review or 'screen' certain complaints *sua sponte* and to dismiss those that failed to state a claim upon which relief could be granted [or] . . . sought monetary relief from a defendant immune from such relief."). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## D.  § 1983 Standard

To state a claim under 42 U.S.C. § 1983, the plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of*

*Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").  In other words, the plaintiff must plead facts sufficient to show: (1) the deprivation of a right, privilege, or immunity secured to him by the United States Constitution or other federal law; and (2) that the individual responsible for such deprivation was acting under color of state law.  *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000).  Plaintiff's complaint in its current form fails to state a claim upon which relief can be granted.[2]

### E.    Official Capacity Claims

Plaintiff has filed suit against several state agencies, as well as various individuals in their individual and official capacities. The claims against the State of Tennessee, TRICOR, TDOC, and TOSHA, as well as against the respective State employees in their official capacity are barred because the State is not a person for purposes of §1983.

The Eleventh Amendment provides a state with immunity from suits brought in federal court.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Thus, it bars an action for damages in a federal court against a state, a state agency, or any of its employees in their official capacities, unless Congress has abrogated its sovereign immunity or the State has expressly waived it.  *See Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986).  Since § 1983 does not abrogate the Eleventh Amendment immunity of the states and their agencies, *Quern v. Jordan*,

---

[2] Courts in the Sixth Circuit have rejected applicability of heightened or lower pleading standards for § 1983 claims and instead found that the same requirement *Twombly* and *Iqbal* plausibility pleading standards govern.  *See e.g.*, *Hutchison v. Metro Gov't of Nashville & Davidson Cnty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) ("In context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted *Iqbal*'s standards strictly."); *Vidal v. Lexington Fayette Urban Cnty. Gov't*, No. 5:13-117-DCR, 2014 U.S. Dist. LEXIS 124718, at *3 (E.D. Ky. Sept. 8, 2014); *Kustes v. Lexington Fayette Urban Cnty. Gov't*, No. 5:12-323-KKC, 2013 U.S. Dist. LEXIS 125763, at *5 (E.D. Ky. Sept. 3, 2013).

440 U.S. 332, 320–45 (1979), and Tennessee has not waived its sovereign immunity with respect to § 1983 complaints, Plaintiff's claims against the State, as well as the state employees in their official capacity are barred by the Eleventh Amendment. *See Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986); *see also Will v. Michigan Dept. Of State Police*, 491 U.S. 491 U.S. 58, 64 (1989) (stating "neither a State nor its officials acting in their official capacities are 'person' under § 1983"). An official capacity suit is to be treated as a suit against the state entity, and therefore a suit for damages against state officials in their official capacity is barred by the Eleventh Amendment. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir.2008) (finding that when a state has not waived its sovereign immunity and defendants are state employees, "[t]o the extent [defendants] are sued in their official capacities, the § 1983 claim fails.").

As the State of Tennessee is not a "person" subject to damages under 42 U.S.C. § 1983, Plaintiff has failed to state a claim against the State, respective state agencies or Defendants in their official capacity. Here, Defendants Allen, Mercer, Baker, and Spero are state employees and TRICOR is a state agency. Defendants Miller, Hunt, Snelling, and Coleman are also state employees, and TDOC is a state agency. Lastly, Defendant Duke is a state employee and TOSHA is a state agency. Accordingly, the claims against Defendants Allen, Mercer, Baker, Spero, Miller, Hunt, Snelling, Coleman, and Duke in their official capacities, as well as against the State of Tennessee, TRICOR, TDOC, and TOSHA will be **DISMISSED** because these claims are effectively against the State of Tennessee and are barred on the ground that a state is not a person within the meaning within the meaning of § 1983. *See Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

**F.     Private Actor Claims Against Shaw**

Plaintiff claims that Shaw, as well as Defendants Jones, Farner, Harmon and Edwards are liable for violations of his constitutional rights under § 1983.  Private actors are generally not liable for constitutional violations unless they acted under color of state law.  *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974).  A private actor is considered a state actor for the purposes of §1983 only if their conduct giving rise to the deprivation of a constitutional right may be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).  "This circuit has recognized as many as four tests to aid courts in determining whether challenged conduct is fairly attributable to the State: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test."  *Marie v. American Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (internal citations omitted).  The fact that a private entity "derives a significant portion of its funding from the government does not convert it into a state actor" for 14th Amendment purposes.  *Wolotsky v. Huhn*, 960 F.2d 1331, 1335–36 (6th Cir. 1992).

Under the public function test, in order to prove that Shaw employees were state actors, Plaintiff must show that "[Defendants] exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain."  *Marie*, 771 F.3d at 362 (quoting *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007)).  "Under this 'relatively stiff test,' few areas are deemed exclusive state action…and many other actions—even those that involve extensive government regulation–do not suffice to establish state action."  *Id.* at 362–63 (internal citations omitted).  In a prison context, a private company that contracts to run prisons, acts "under state law" for purposes of Section 1983, as the private company performs the "traditional state function" of operating a prison.  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation

that provides medical care to prisoners can be sued under § 1983). However, the Court does not believe that "the operation of an employment system within a prison or for prison inmates has been an *exclusive* function of the State." *Sutton v. Kan. Dep't of Corr.*, No. 12-3238-SAC-DJW, 2015 WL 5692069, at *4 (D. Kan. Sept. 28, 2015). Plaintiffs have the burden "to advance historical and factual allegations in their complaint giving rise a reasonable inference that [Defendants' responsibilities are] traditionally exclusively in the province of the State." *Marie*, 771 F.3d at 362 (citing *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003)). Plaintiff has failed to allege that Shaw, in operating the industry plant at the BCCX facility, is performing a traditional state function.

Under the "state compulsion" test, a state "must exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335. Further, "[m]ore than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id.* (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004(1982)). The grant of state funds to the party in question does not give rise to coercive power or state action under this test. *Id.* Plaintiff cites to the contract between Anderson/Shaw, the State of Tennessee, TRICOR, and TDOC; where labor is provided as a part of the TRICOR program for Shaw at the plant located at BCCX. Although Shaw is required to gain approval from the State for any alterations and abide by TRICOR and TDOC guidelines, as well as coordinate with TRICOR regarding the selection and supervision of employees, Plaintiff fails to allege sufficient facts to demonstrate "the choice of the private actor is deemed to be that of the state." *Id.*

With respect to Plaintiff's First Amendment retaliation and Equal Protection claims stemming from his termination and failure to be reinstated to the TRICOR program, Plaintiff fails

to allege facts that the Shaw defendants' actions were "fairly attributable to the State." *Marie*, 771 F.3d at 362. Plaintiff merely states that Defendant Edwards, a Shaw manager, acted in conspiracy with Defendant Baker, to refuse to reinstate Plaintiff to the TRICOR program. The facts alleged indicate that Defendant Baker, and TRICOR, controlled reinstatement to the program. This choice is of the state actor, as opposed to a private defendant. In addition, Plaintiff's Eighth Amendment claim based on hazardous working conditions states solely that TRICOR and TDOC defendants were generally responsible for the safety of its prisoners, while the Shaw defendants failed to produce proper PPEs. More than "mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id.* at 362–63 (citing *Blum*, 457 U.S. at 1004). As Plaintiffs do not assert any facts that show the state exercised coercive power or encouragement over the operation of Defendants' business to convert Defendants into state actors, the Court must find that that Defendants do not satisfy this test.

Under the third test, the symbiotic relationship or nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000). "[I]t must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983." *Wolotsky*, 960 F.2d at 1335.

In *Sutton v. Kansas Department of Corrections*, a prisoner alleged several § 1983 claims, including a claim of deliberate indifference under the Eighth Amendment for exposure to hazardous chemicals, against a private company that operated an apparel decorating plant at a correctional facility. No. 12-3238-SAC-DJW, 2015 WL 5692069, at *1 (D. Kan. Sept. 28, 2015). The *Sutton* Court held that a "contract which governs the relationship between defendant and the

State" and the fact that the private company "provides jobs for inmates and that the State provides inmates for the jobs" did not render the private company a state actor under the "symbiotic relationship" test. *Id.* at *4. Rather, it must have been demonstrated that the State "was a joint participant in establishing the safety conditions of plaintiff's employment." *Id.* at *6.

With respect to Plaintiff's claims relating to his termination from the TRICOR program, he fails to attribute a constitutional violation to "the regulated entity." *Lansing*, 202 F.3d at 830. Plaintiff's First Amendment retaliation claim, as well as his Equal Protection claim, center on the failure of Defendant Baker to reinstate him to the TRICOR program. No facts alleged indicate conduct of a Shaw defendant, other than simply alleging that Defendants Baker and Edwards were involved in a conspiracy. While private actors may be liable under § 1983, if they conspire with a state actor to violate civil rights, *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1981), merely alleging a conspiracy existed, unsupported by facts, does not give rise to a "plausible suggestion of conspiracy." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (U.S. 2007). Additionally, although Shaw had the authority to participate in the disciplinary process, "the ability of [private company] defendants to instigate discipline does not compel a finding of state action here because the plaintiff's claims against the [private company] defendants do not arise from a disciplinary event initiated by [the private company]." *Sutton*, 2015 WL 5692069, at *6. No facts alleged indicate the involvement of Defendant Edwards or Shaw in Plaintiff's termination or failure to be reinstated. Therefore "no challenged private conduct" exists to be "attributed to the state for purposes of section 1983." *Wolotsky*, 960 F.2d at 1335.

Additionally, Plaintiff's Eighth Amendment deliberate indifference claim fails to identify that "the state is intimately involved in the challenged private conduct." *Id.* The Plaintiff fails to allege that the State "was a joint participant in establishing the safety conditions of plaintiff's

employment." *Sutton*, 2015 WL 5692069 at *6. "[G]eneral rules and regulations" do not constitute a symbiotic relationship "in the absence of a specific causal connection…." *Id.* Plaintiff claims that the respective State defendants were responsible for overseeing the safety of prisoners assigned to the BCCX plant. However, Plaintiff admits that Shaw was responsible for running the day-to-day operations of the plant, as well as providing required materials. "If contracting, funding, and regulating was sufficient to create state action, nearly every government contract would produce the possibility of § 1983 liability against the government contractor." *Bourbon Cmty. Hosp. v. Coventry Health and Life Ins. Co.*, No. 3:15-cv-00455-JHM, 2016 WL 51269, at *5 (citing *Quinones v. UnitedHealth Grp. Inc.*, No. CIV. 14-00497 LEK, 2015 WL 4523499, at *4 (D. Haw. July 24, 2015)). Plaintiff has failed to allege that the State "was a joint participant in establishing the safety conditions of a plaintiff's employment." *Sutton*, 2015 WL 5692069 at *6. Therefore, Plaintiff has failed to allege sufficient facts establishing control by the State over the specific conduct of which Plaintiff claims.

Lastly, under the entwinement test, Plaintiff must show that Shaw was "'entwined with governmental policies' or that the government is 'entwined in [the private entity's] management or control.'" *Marie v. American Red Cross*, 771 F.3d 344, 363 (6th Cir. 2014) (internal citations omitted). "The crucial inquiry under the entwinement test is whether the 'nominally private character' of the private entity 'is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it.'" *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298 (2001)).

Plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" that a sufficiently close relationship existed between the State and Shaw, due to the BCCX plant located at BCCX. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Plaintiff cites to the contract between Anderson/Shaw, the State of Tennessee, TRICOR, and TDOC, where labor is provided as a part of the TRICOR program for Shaw at the plant located at BCCX. However, more than the "authority to assist in discipline" or "provid[ing] jobs for inmates…is required to plausibly infer that the State is so entwined with defendant in the operation of the employment program…." *Sutton v. Kan. Dep't of Corr.*, No. 12-3238-SAC-DJW, 2015 WL 5692069, at *6 (D. Kan. Sept. 28, 2015). Although Plaintiff claims that TDOC employees were responsible for overseeing the general health and safety of the prisoners that worked at the BCCX plant, Plaintiff fails to claim that the State "was a joint participant in establishing the safety conditions of the plaintiff's employment." *Id.* Additionally, Plaintiff claims that TRICOR employees were responsible for overseeing the operations at the BCCX plant; however, Plaintiff fails to allege any direct, day-to-day involvement. Although Shaw could consult in discipline, the final authority to terminate Plaintiff was in the hands of Defendant Baker and TRICOR. Plaintiff fails to allege sufficient facts to establish that the shared responsibilities between Shaw, TRICOR, and TDOC state a claim that the "'nominally private character' of the private entity 'is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings…." *Vistein*, 342 F. App'x at 128 (quoting *Brentwood Acad.*, 531 U.S. at 298.

In sum, Plaintiff's claims against Shaw, as well as the respective Shaw employees, do not state a valid § 1983 claim under any of the above four tests, as Plaintiff does not plausibly assert that his termination from the TRICOR program or the working conditions at the BCCX plant

should be attributable to the State. Therefore, the claims against Shaw, as well as against Defendants Jones, Farner, Harmon and Edwards in their individual capacities, will be **DISMISSED** because these claims are not against a state actor.

### G. First Amendment Retaliation Claims

Plaintiff claims that the exercise of his protected First Amendment rights was violated by his retaliatory termination from the TRICOR program by Defendant Baker, as well as through Defendants Baker and Edwards preventing him from being reinstated to the TRICOR program.

"Retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994). "[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Bloch v. Ribar*, 156 F.3d 673, 681–82 (6th Cir. 1998). Therefore, a prisoner states a valid retaliation claim if he shows that: (1) he engaged in protected conduct, (2) someone took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in such conduct, and (3) the protected conduct motivated the adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Moreover, a plaintiff "must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1. Claims against Defendant Baker

Plaintiff claims that the actions of Defendant Baker in terminating the Plaintiff from his TRICOR program assignment, with knowledge of the respective lawsuits and grievances the Plaintiff filed against TRICOR and Shaw, constituted retaliation against him. His allegations do

not satisfy the requisite elements of a retaliation claim, as Plaintiff does not identify any causal connection showing that the exercise of his First Amendment rights was a substantial or motivating factor for the termination of his employment.

The Sixth Circuit has recognized that inmates possess a First Amendment petition right to be free from retaliation for filing grievances or pursuing legal action. *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (recognizing claim where the inmate alleged that prison officials "impermissibly retaliated against him for exercising his First Amendment right to file grievances and petition the court for redress"); *see also Clark v. Johnston*, 413 F. App'x 804, 815 (6th Cir. 2011). Therefore, Plaintiff's filing of grievances against TRICOR, as well as the filing of legal action, amounts to protected conduct.

At issue is whether the termination of a prison work assignment amounts to adverse action within the meaning of *Thaddeus-X*. Other circuits have unequivocally held that "the termination of prison employment constitutes adverse action sufficient to deter the exercise of First Amendment rights, satisfying the second element of a retaliation claim at this state of the litigation." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3rd Cir. 2017) (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) ("[A prisoner] has no right to a job ... [but] prison officials cannot punish [him for] exercising his first amendment rights by denying him certain job assignments or transferring him from one job to another.")). Additionally, "[c]ase law in this circuit suggests that it is arguable that the loss of a prison job is sufficiently adverse to satisfy the second prong of [the *Thaddeus-X*] test." *Peebles v. Williamson County Justice Center*, No. 3:15-cv-00504, 2015 WL 2121460, at *3 (M.D. Tenn. May 5, 2015) (citing *Brown v. Johnson*, No. 2:10–CV–965, 2012 WL 32711, at *4 (S.D. Ohio Jan. 6, 2012), report and recommendation adopted, No. 2:10–CV–965, 2012 WL 3237198 (S.D. Ohio Aug. 7, 2012) (collecting cases and denying motion to dismiss

where inmate alleged he was removed from his job in retaliation for protected activity)). Therefore, as termination can likely be considered an adverse action, Plaintiff has adequately pleaded facts and allegations sufficient to establish the second element of this retaliation claim.

Nevertheless, Plaintiff's allegations concerning causation fall far short of demonstrating that the actions taken by Defendant Baker were motivated by Plaintiff's protected conduct. As for the third element, "[b]ecause the question is whether the adverse action was taken (at least in part) because of the protected conduct, the causation inquiry centers on the defendant's motive." *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007). It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987) ("[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'")). In limited circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, solely "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

None of the facts alleged indicate that Defendant Baker's decision was motivated by Plaintiff's protected actions of filing grievances and lawsuits. Plaintiff however merely asserts the ultimate fact of retaliation. The sole connecting fact alleged is that he informed Defendant Baker of the pending lawsuit against Shaw while Plaintiff was reviewing his TRICOR offender file, as well as Defendant Baker's knowledge of his previous lawsuits and grievances [Doc. 2 at 10]. Mere temporal proximity between the protected actions and Plaintiff's termination does not indicate a

sufficient causal connection, as Plaintiff is unable to demonstrate that the exercise of the protected right was a "substantial or motivating factor" in his termination. *See Smith*, 250 F.3d at 1037. A prisoner does not have a right to work, solely a right to be free from retaliation. *See Dobbins v. Craycraft*, 423 F. App'x 550, 552 (6th Cir. 2011). Plaintiff's allegations concerning his termination do not assert Defendant Baker's motive in terminating the Plaintiff. *See Thomas*, 481 F.3d at 441. Therefore, the claim against Defendant Baker in his individual capacity will be **DISMISSED** because Plaintiff does not state a viable First Amendment retaliation claim.

### 2. Conspiracy Claims against Defendants Baker and Edwards

Plaintiff also claims that Defendants Baker and Edwards conspired to prevent him from being reassigned to the TRICOR program in retaliation for his exercise of protected speech under the First Amendment. Although Defendant Edwards has been found not to be a state actor, the Plaintiff is still unable to allege the existence of a conspiracy.

A civil conspiracy "is an agreement between two or more persons to injure another by unlawful action." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (citing *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirators shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (recognizing that allegations of conspiracy must be supported by facts that give rise to a "plausible suggestion of conspiracy," not merely a "possible" one); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th

Cir. 1987) (holding "conclusory allegations unsupported by material facts will not be sufficient to state a claim under §1983").

Plaintiff's conspiracy claim is based on his lack of reinstatement to the TRICOR program; however, under the heightened pleading standard required to allege the presence of a conspiracy, Plaintiff fails to state a valid claim. Defendant Baker, a TRICOR manager, is alleged to have control over whether the Plaintiff is eligible for reinstatement. Plaintiff's conspiracy claim involves Defendant Baker's actions in concert with Defendant Edwards, a Shaw manager, who is alleged to have authority to determine which offenders are allowed to be assigned to the TRICOR program. Plaintiff merely states the fact that he has not been reinstated to the TRICOR program as sole evidence that a conspiracy exists between Defendants Baker and Edwards. No further evidence exists of a "general conspiratorial objective" between the respective Defendants. *See Hensley*, 693 F.3d at 695. Noticeably absent from the Complaint is any factual basis or support evidencing a "meeting of the minds" or agreement between the defendants. It is precisely this type of "vague and conclusory allegation[] unsupported by material fact[] [that is] not . . . sufficient to state a [conspiracy] claim under [§] 1983." *Gutierrez*, 826 F.2d at 1538; *see also Wallace v. Carlton*, 2:07-cv-246, 2010 WL 1957492, at *5 (E.D. Tenn. May 13, 2010) (rejecting conspiracy to retaliate claim where the allegations lacked specificity and the complaint lacked "any facts to show that there was a 'meeting of the minds' between two or more defendants as to one plan"). Therefore, no "plausible suggestion of conspiracy" can be drawn from the facts alleged. *See Twombly*, 550 U.S. at 566.

Further, Plaintiff does not state a viable First Amendment claim of retaliation. Plaintiff has further failed to prove that "the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *See Smith v. Campbell*, 250 F.3d 1032, 1037

(6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). No facts are alleged claiming the actions of Defendants Baker and Edwards, in failing to reinstate Plaintiff to TRICOR program, were based upon a motive to retaliate against the Plaintiff. Accordingly, the Plaintiff has failed to state a valid First Amendment retaliation claim against Defendant Baker in his individual capacity. The First Amendment retaliation claim against Defendant Baker in his individual capacity will be **DISMISSED** as Plaintiff has failed to state a claim.

### H.    Equal Protection Claims

Plaintiff claims that he was denied equal protection under the Fourteenth Amendment when Defendants Baker and Edwards failed to follow TRICOR policy allowing for offenders who are terminated from the TRICOR wood flooring plant to be reassigned up to three times before becoming ineligible. Plaintiff also claims that Defendant Duke violated his right to equal protection under the Fourteenth Amendment by failing to perform an inspection of the BCCX plant. Lastly, Plaintiff also claims that Defendant Duke's actions constituted a state law tort of negligence.

The Equal Protection clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, §1. Specifically, it prohibits discrimination by the government which either: 1) burdens a fundamental right; 2) targets a suspect class; or 3) "intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). "[P]risoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). Similarly, a prisoner does not have a Constitutional right to work or earn wages in prison. *See Dobbins v. Craycraft*,

22

423 F. App'x 550, 552 (6th Cir. 2011); *Davis v. Clinton*, 74 F. App'x 452, 455 (6th Cir. 2003) (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)). However, although a prisoner has no right to a job in prison or to any particular job assignment, he does have a Fourteenth Amendment right to equal protection from prison officials when choosing whether to assign a prisoner to a job or in choosing what job to assign. *McKinley v. Bowlen*, 8 F. App'x 488, 492 (6th Cir. 2001). Plaintiff's claim therefore is subject to rational basis review. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006).

### 1.    Claims Against Defendants Baker and Edwards

Plaintiff's equal protection claim against Defendants Baker and Edwards stems from the failure to reinstate Plaintiff to the TRICOR program, contrary to alleged TRICOR policy. However, Plaintiff alleges no facts from which to infer that Defendants Baker and Edwards treated similarly-situated prisoners more favorably, or purposefully discriminated against Plaintiff. While Defendant Edwards has been found to not be a state actor liable under § 1983, the Plaintiff fails to state a viable equal protection claim.

As Plaintiff has not alleged discrimination based upon membership in an identifiable group, the Plaintiff's equal protection claim is addressed under a "class of one" analysis. *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012). To prove such a claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Under a class of one equal protection theory, Plaintiff must include in his complaint facts that demonstrate disparate treatment of similarly situated individuals. *Olech*, 528 U.S. at 564.

Further, he must show that he was similarly situated to those treated differently in "all material respects." *TriHealth, Inc. v. Bd. Of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005). A plaintiff must first prove, as a "threshold" matter, that the defendant treated them differently from similarly situated individuals. *Taylor Acquisitions, L.L.C., v. City of Taylor*, 313 F. App'x 826, 836 (citing *Braun v. Ann Arbor Charter TWP.*, 519 F.3d 564, 575 (6th Cir. 2008)). He must also show that the adverse treatment he experienced was "so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Warren v. City of Athens*, 411 F.3d 697, 710–11 (6th Cir. 2005) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000)). This showing is made either by negating every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will. *Id.* at 711.

Plaintiff claims that Defendant Baker was in control of reinstatement to the TRICOR program, and Defendant Edwards, as a Shaw manager, had input regarding prisoners assigned to the BCCX plant located at BCCX. Also, Plaintiff alleges that his lack of reinstatement is in violation of a clearly established policy allowing for reinstatement up to three times. However, Plaintiff is unable to cite to any actual TDOC or TRICOR policy allowing reinstatement for offenders up to three times after termination. Further, Defendants' alleged deviation from prison policy is not sufficient, by itself, to state a claim. *See Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a constitutional right or a protectable liberty interest).

Additionally, Plaintiff merely states that he is being treated differently from other offenders, but fails to provide specific factual allegations regarding the alleged policy applied to others in the TRICOR program. Conclusory allegations of unconstitutional conduct without

specific factual allegations fail to state a claim under §1983.  *See Ashcroft*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555; *see also Clark v. Johnston*, 413 F. App'x 804, 817–18 (6th Cir. 2011) (holding a prisoner had not adequately pleaded an "equal-protection violation under a 'class of one' theory" based on the general allegation that certain prison policies were "selectively" enforced against him); *Bertovich v. Vill. of Valley View, Ohio*, 431 F. App'x 455, 458 (6th Cir. 2011) (holding that dismissal of an equal protection claim was appropriate under Fed. R. Civ. P. 12(b)(6) where plaintiff's complaint "does not point to any individual who was treated differently").

As the Complaint does not identify an individual who is similarly situated, and instead bases its allegations on conclusory statements, Plaintiff fails to state an equal protection claim as to his failure to be reinstated to the TRICOR program.  Plaintiff asserts that he was terminated from the TRICOR program, while the fellow offender involved in the altercation was not.  However, he does not identify individuals who were treated differently with respect to the alleged reinstatement policy.  Therefore, Plaintiff is unable to demonstrate the threshold matter that he is similarly situated to those treated differently in "all material respects."  *TriHealth Inc.*, 430 F.3d at 790.

In the alternative, even if Plaintiff satisfied the threshold inquiry for identifying similarly situated individuals, he must still demonstrate that the termination decision, and lack of reinstatement, were not rationally related to a legitimate government purpose.  *See Warren v. City of Athens*, 411 F.3d 697, 710–11 (6th Cir. 2005).  Plaintiff has failed to satisfy his burden of demonstrating that the government lacks a rational basis by negating "every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or will."  *Id.*  Importantly, a prisoner has no right to employment

within the prison, or a right to a specific job assignment. *See Dobbins v. Craycraft*, 423 F. App'x 550, 552 (6th Cir. 2011); *Davis v. Clinton*, 74 F. App'x 452, 455 (6th Cir. 2003) (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)). The Plaintiff was terminated from the TRICOR program for an altercation with another prisoner regarding the sharpening of a blade, after which Plaintiff damaged the blade. As the Plaintiff has failed to negate every conceivable legitimate basis for the termination, deference must be given to the legitimate interest of prison security and administration. See *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplishing them.").

As Plaintiff's conclusory allegations of violations of equal protection under the Fourteenth Amendment without specific factual allegations fail to state a claim under § 1983, Plaintiff fails to state a claim against Defendant Baker in his individual capacity. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. The claim against Defendant Baker in his individual capacity will thus be **DISMISSED**.

### 2. Claims Against Defendant Duke

#### a. Equal Protection Claim

Plaintiff states that he was denied an inspection by TOSHA in comparison with similarly situated individuals in the "free world market," a violation of his equal protection rights [Doc. 2 p. 26]. Importantly, as "prisoners are not considered a suspect class for purposes of equal protection litigation," the Plaintiff's claim is subject to rational basis review. *See Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). Plaintiff, therefore, is claiming he was discriminated

against, based upon his membership as a prisoner employee, as compared to employees in the non-prison context.

As Plaintiff does not allege membership in a protected class, his claim is examined under a "class of one" analysis. *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff however has failed to state a valid equal protection claim, as he has not alleged that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* Only citing workers not employed in the prison context does not identity similarly situated individuals in "all material respects." *TriHealth, Inc. v. Bd. Of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005); *see Bertovich v. Vill. of Valley View, Ohio*, 431 F. App'x 455, 458 (6th Cir. 2011). Lastly, Plaintiff's sole allegation to support his claim that there was no rational basis for Defendant Duke's action is that TOSHA did in fact have jurisdiction over the BCCX plant. He thus fails to satisfy his burden to "demonstrate that a government action lacks a rational basis ... either by negating every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005). The equal protection claim against Defendant Duke in his individual capacity will thus be **DISMISSED** for a failure to state a claim.

### b.     Negligence Claim

Plaintiff also fails to state a claim with respect to his claim of negligence under Tennessee law against Defendant Duke. He claims that Defendant Duke was negligent in failing to perform an inspection, and this failure to perform an inspection would have forced Plaintiff to forego his anonymity to obtain the results of any investigation. However, Plaintiff fails to allege a specific duty of care owed to him by Defendant Duke, solely claiming that all Defendants, as state employees, had a duty to exercise due care to protect Plaintiff's health. Lastly, Plaintiff claims

that "[a]t all times relevant to this actions, Defendants were acting in a ministerial, operational, and non-discretionary capacity…" [Doc. 2, p. 22].

Under Tenn. Code Ann. §9-8-307(h), "State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions done for personal gain." The Tennessee Claims Commission also has exclusive jurisdiction of a claim against state officials in their official capacity. *Id.* Immunity under this statute for acts within the scope of a state employee's employment applies to state-law claims filed in federal courts. *See Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1421 (6th Cir. 1996). Defendant Duke, a state employee under Tenn. Code Ann. § 8-42-101, was acting within the scope of his employment at all times relevant to the current action. Therefore, as Defendant Duke is immune from suit, Plaintiff does not state a viable negligence claim against Defendant Duke in his individual capacity. The negligence claim against Defendant Duke in his individual capacity will therefore be **DISMISSED**.

## I.     Deliberate Indifference Under the Eighth Amendment

Plaintiff claims that various Defendants were deliberately indifferent to his health and safety by exposing him to hazardous working conditions in violation of his Eighth Amendment right to be free from cruel and unusual punishment. In particular, Plaintiff claims that Defendants Spero, Miller, Hunt, Snelling and Coleman were deliberately indifferent to the safety of workers at the BCCX plant by failing to ensure proper exhaust ventilation existed to remove airborne contaminates and toxins. In addition, Plaintiff claims that Defendants Allen, Mercer, Baker, Jones, Farner, Harmon and Edwards were deliberately in failing to ensure an adequate supply of air particulate respirators existed at the BCCX plant.

In general, a prisoner may demonstrate a violation of the Eight Amendment with respect to the conditions of confinement if he shows that he has been deprived of "the minimal civilized measures of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 832–834 (1994). To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show: (1) "he has suffered an objectively, sufficiently serious injury," and (2) "that prison officials inflicted the injury with deliberate indifference." *Id.* at 834. "Although the Sixth Circuit has not addressed claims related to the hazardous working conditions of inmates, other circuits have held that the Eighth Amendment is implicated when prisoners are forced to perform physical labor which is 'beyond their strength, endangers their lives, or causes undue pain.'" *Rayburn v. Blue*, 154 F. Supp. 3d 523, 532 (W.D. Ky. 2015) (citing *Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983)); *see also Middlebrook v. Tennessee*, No. 07-2373, 2008 WL 22002521, at *11 (W.D. Tenn. 2008) (citing *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006)).

The objective component requires proof the inmate is suffering from a sufficiently serious medical need, such that "he [was] incarcerated under conditions posing a substantial risk of serious harm." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer*, 511 U.S. at 834). Thus, the Eighth Amendment protects against prison conditions that threaten to cause health problems in the future, not just conditions that cause immediate medical problems. *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993). In a case alleging improper exposure to some harmful substance, the plaintiff must show that he is personally "being exposed to unreasonably high levels" of the substance that pose "an unreasonable risk of serious damage to his future health." *Id.* at 35–36. The risk must be "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.*

The second prong of the *Farmer* test is a subjective one, requiring plaintiff to demonstrate that defendants acted with "deliberate indifference." *Farmer*, 511 U.S. at 834. To prove this subjective standard, a plaintiff must allege facts sufficient to establish that the defendant: (1) "perceived the facts from which to infer substantial risk to the prisoner," (2) "did in fact draw the inference;" and (3) "then disregarded that risk." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). Conduct undertaken with "'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 836). Thus, deliberate indifference requires more than mere negligence; it requires a mental state amounting to criminal recklessness. *Santiago*, 734 F.3d at 591 (citing *Farmer*, 511 U.S. at 834, 839–40).

Several Pennsylvania district court cases have addressed exposure to crystalline silica as a result of employment in a factory located at a federal prison. The consolidated holdings from these cases can be found in *Ward v. Lamanna*, 334 F. App'x 487 (3rd Cir. 2009), where the Third Circuit held that the prison officials were not acting in deliberate indifference to the Plaintiff's health and safety. The *Ward* court held the plaintiffs could not meet the "subjective element of deliberate indifference," as "[t]here is no evidence to support a reasonable inference that the prison staff was aware of an unreasonable risk" stemming from prisoner's exposure to dust from cutting synthetic substitute for particle boards and through the use of glue. *Id.* at 491.

### 1. Lack of a Proper Ventilation System

Plaintiff claims that the Defendants were deliberately indifferent in failing to ensure that the work environment at the BCCX plant was free from safety hazards through a lack of a proper exhaust ventilation system, and thus were deliberately indifferent to the Plaintiff's risk of injury.

With respect to the first prong of the Eighth Amendment analysis, Plaintiff must demonstrate a genuine objective risk to his workplace safety. In order to satisfy this objective standard of the *Farmer* test, Plaintiff must show that he has been exposed to unreasonably high levels of dangerous crystalline silica. *See Helling*, 509 U.S. at 35. The facts alleged state that an Industrial Hygiene Sampling conducted at the BCCX plant on August 21, 2014 show that the BCCX plant is within the permissible exposure limit established by TOSHA. However, Plaintiff claims that the sampling was improperly conducted and is not applicable. As Plaintiff has challenged the reliability and applicability of the sampling's results, the Industrial Hygiene Sampling is not wholly controlling to combat Plaintiff's claims that unreasonably high levels of particulate matter exist at the BCCX plant. Plaintiff additionally claims that his work resulted in a substantial exposure to crystalline silica and risk of future illness, which manifested itself in coughing up mucus and shortness of breath.

However, Plaintiff fails to state a plausible claim that the respective Defendants acted in deliberate indifference, in that each defendant knew of and recklessly disregarded a substantial risk to the defendant's health and safety. To state a claim for relief, Plaintiff must show how each Defendant is accountable because that Defendant was personally involved in the acts about which Plaintiff complains. *Rizzo v. Goode*, 423 U.S. 362, 375–77 (1976); *see Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (stating "officials are liable for damages under [§ 1983] only for their own unconstitutional behavior"). Plaintiff claims that Defendants Miller and Spero, as a TDOC manager and Environmental Safety Specialist, were responsible for the health of offenders in the custody of TDOC. Additionally, Plaintiff cites the letter between Defendants Miller and Spero to show that a ventilation system was not in place, and that fans were not available. Lastly, Plaintiff claims that Defendants Hunt, Snelling and Coleman, in their role as TRICOR managers, were

responsible for overseeing operations at the BCCX plant, including the enforcement of rules and identifying hazards to the workforce.

Plaintiff though fails to allege how each Defendant knew that he faced a substantial risk of serious harm, and how they failed to take reasonable steps to abate that serious risk of harm. The Industrial Hygiene Sampling conducted at the BCCX plant on August 21, 2014 showed that the BCCX plant is within the permissible exposure limit. A grievance filed by the Plaintiff on September 4, 2016 is alleged to have notified the Defendants of health hazards at the BCCX plant. However, this grievance, as well as the letter between Defendants Spero and Miller, occurred after the Defendant's November 30, 2015 termination. Plaintiff fails to allege any facts supporting an inference that the Defendants acted with "deliberate indifference to a substantial risk of serious harm" to his health, or that the actions of the Defendants were "the equivalent of recklessly disregarding that risk." *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

Plaintiff solely claims that the respective Defendants, in their role as managers responsible for the operations of the BCCX plant, were responsible for the safety of the prisoner employees. No facts are alleged to show that the Defendants had notice of the need for an exhaust ventilation system, or that each Defendant recklessly disregarded this risk. Additionally, Plaintiff has not demonstrated the need for a ventilation system. While it may be true that "[a]n act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage…an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot…be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38.

Therefore, Plaintiff fails to state a valid claim of deliberate indifference under the Eighth Amendment against these Defendants. The Eighth Amendment claims against Defendants Spero, Miller, Hunt, Snelling and Coleman, in their individual capacity, will thus be **DISMISSED**.

### 2. Failure to Provide Adequate PPE

Plaintiff states that Defendants Allen, Mercer, Baker, Jones, Farner, Harmon and Edwards were deliberately indifferent in failing to ensure that an adequate supply of PPEs were in place at the BCCX plant. In particular, Plaintiff claims that from October 2008 until late 2011 or early 2012, prisoners only had access to a nuisance dusk mask, rather than a particulate respirator rated for use with grinding and sanding. Also, Plaintiff states that no program was in place from October 2008 until October 2014 that recommended the use of PPEs at the BCCX plant. Lastly, Plaintiff claims that periods existed when no suitable PPEs were available, including up to three weeks.

Plaintiff claims that Defendants Allen, Mercer and Baker, as TRICOR managers, were responsible for overseeing the daily operations at the BCCX plant. He states that Defendants Jones, Farner, Harmon and Edwards, as Shaw managers, were responsible for providing all necessary tools, equipment and supplies necessary for work at the BCCX plant. Although Defendants Jones, Farner, Harmon and Edwards have been found not to be state actors, the Plaintiff regardless fails to state a viable Eighth Amendment claim.

As discussed above, Plaintiff has stated sufficient facts to set forth a plausible claim with respect to the first prong of the *Farmer* test, a genuine objective risk to his workplace safety. Plaintiff is able to state a claim that he was exposed to unreasonably high levels of respirable airborne dust particulates as a result of his work at the TRICOR facility, as he claims this substantial exposure as a result from the sanding and scraping of wood putty. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993). Although the Industrial Hygiene Sampling conducted at the

BCCX plant shows the plant within the permissible exposure limit, Plaintiff has attacked the applicability of this sampling.

However, Plaintiff has failed to demonstrate that each Defendant acted in "deliberate indifference" to a substantial risk of harm. *Farmer*, 511 U.S. at 834. For all defendants Plaintiff wishes to sue under this cause of action, he must allege how they knew that Plaintiff faced a substantial risk of serious harm, and how they then failed to take reasonable steps to abate that risk. *See Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). No facts are alleged that a state actor had knowledge of the risk of harm. Plaintiff solely cites that the respective TRICOR and TDOC employees were responsible for overseeing the operations at the BCCX plant and for the health and safety of the prisoner employees. As stated above, all grievances and facts alleged to put the Defendants on notice of the risk of harm to Plaintiff's health occurred after his termination. Additionally, Plaintiff admits that Shaw was responsible by contract for providing all necessary materials, thus including safety materials. By failing to allege sufficient facts to support a finding that the Defendants were aware of such a risk, the Plaintiff cannot state actions of the Defendants that were "the equivalent of recklessly disregarding that risk." *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 825). Thus, Plaintiff has failed to state a valid deliberate indifference claim against Defendants Allen, Mercer and Baker. The Eighth Amendment claim against Defendants Allen, Mercer and Baker, in their individual capacity, will be **DISMISSED**.

## III.    CONCLUSION

Because Plaintiff is a detainee in the Bledsoe County Correctional Complex, he is herewith **ASSESSED** the civil filing fee of $350.00. Pursuant to 28 U.S.C. § 1915(b)(2), the custodian of Plaintiff's inmate trust account at the institution where he now resides is directed to submit to the

Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, twenty percent (20%) of the Plaintiff's preceding monthly income (or income credited to the Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to send a copy of this Memorandum to the Warden of Bledsoe County Correctional Complex to ensure that the custodian of plaintiff's trust account complies with that portion of the Prison Litigation Reform Act relating to payment of the filing fee. The Clerk is **DIRECTED** to forward a copy of this Memorandum to the Court's financial deputy.

Although this Court is mindful that a pro se complaint is to be liberally construed, *Haines v Kerner*, 404 U.S. 519, 510–21 (1972), it is quite clear that the plaintiff has not alleged the deprivation of any constitutionally protected right, privilege, or immunity, and therefore, the Court finds his claims to be frivolous under 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff's request to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**. His complaint [Doc. 2] and request for counsel [Doc. 3] will be **DENIED**; the action [E.D. Tenn. Case No. 1:16-CV-469-HSM-SKL] will be **DISMISSED** *sua sponte* for failure to state a viable claim under 42 U.S.C. § 1983.

Finally, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. See Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**


_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE